UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MO CHIAO SUNG,

                Plaintiff,

      v.

LOUIS DEJOY *et al.*,

                Defendants.

**MEMORANDUM & ORDER**
22-CV-07682 (HG) (LB)

**HECTOR GONZALEZ**, United States District Judge:

    *Pro se* Plaintiff Mo Chiao Sung, a former U.S. Postal Service ("USPS") employee, sued Postmaster General Louis DeJoy and USPS employees Edward Choy, Xue Jun Ni[1], Janneth Cancel, and Julie Choy (collectively, the "USPS Defendants"), as well as union representatives Brian L. Renfroe and Harry Carney (together, the "Union Defendants"). He alleges, among many other things, that his termination from USPS was discriminatory. Plaintiff's claims against the USPS Defendants fail because they do not come within the Court's subject-matter jurisdiction, are untimely, or fail to plausibly allege discrimination, requiring dismissal. Further, Plaintiff's claims against the Union Defendants are dismissed because he failed to properly serve them, and his time to complete service will not be extended.

**BACKGROUND**[2]

    On November 30, 2022, Plaintiff filed his first complaint in the Southern District of New York. ECF No. 1. On December 9, 2022, Chief Judge Swain transferred the case to this Court.

---

[1]    The USPS Defendants represent that Defendant Ni is incorrectly referred to as "Julie Ni" in the SAC. The Court uses her correct name.

[2]    Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes. Direct quotes from Plaintiff's papers standardize

ECF No. 3.  Plaintiff filed an amended complaint on February 27, 2023.  ECF No. 10.  On March

23, 2023, he filed another letter providing more detail about his allegations.  ECF No. 14.  He

filed another document labeled an "Amended Complaint" on April 19, 2023, ECF No. 18, which

Magistrate Judge Bloom construed as a motion for voluntary dismissal as to Defendant Doug

Palma, *see* April 20, 2023, Text Order.  On May 3, 2023, Plaintiff filed two more documents

with the label "Amended Complaint," ECF Nos. 20, 21, as well as a letter, ECF No. 22.  Judge

Bloom construed docket entries 18 and 22 as a notice of voluntary dismissal as to then-

Defendant Palma and dismissed him from the case.  *See* May 8, 2023, Text Order.  On July 20,

2023, Plaintiff filed a proposed second amended complaint, ECF No. 28-1 ("SAC"), which

Judge Bloom deemed effective the next day, *see* July 21, 2023, Text Order.[3]  The SAC is the

operative complaint.  *Id.*

Plaintiff makes only a few factual allegations throughout his voluminous filings, which

consist mostly of letters and other documents he filed and received during his long and

complicated employment relationship with USPS.  The Court draws the following facts from the

SAC and other filings, as well as other documents of which the Court may take judicial notice.[4]

---

capitalization.  The Court refers to the pages assigned by the Electronic Case Files system
("ECF").

[3]     The SAC does not include then-Defendant Judy Lin, and she was terminated from the
case on July 21, 2023.

[4]     The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all
reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly
supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133
(2d Cir. 2021).  The Court therefore "recite[s] the substance of the allegations as if they
represented true facts, with the understanding that these are not findings of the [C]ourt, as we
have no way of knowing at this stage what are the true facts."  *Id.*

Plaintiff began his employment at USPS on August 15, 1998.  ECF No. 21 at 51 (Oct. 8, 2019, Notice of Removal).[5]  He filed an Equal Employment Opportunity ("EEO") complaint in June 2000.  ECF No. 42-1 at 3 (Nov. 30, 2020, EEOC Dismissal Order).[6]  That complaint did not relate to his subsequent injury but rather appears to have concerned an incident in which a supervisor talked "loud[ly]" to him and ordered him to undertake "retraining" in March 2000.  ECF No. 52 at 22 (June 17, 2000, USPS EEO Complaint); ECF No. 1 at 13.  According to a report filed with the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP"), Plaintiff first injured his shoulders and back on August 1, 2000.  ECF No. 28-1 at 34 (June 28, 2023, OWCP Duty Status Report).  According to Plaintiff, he continued with "limited duty" work "until around 2011."  ECF No. 52 at 3 (Plaintiff's Opposition).  During that period, his working conditions were "fine."  *Id.*  In 2011, though, USPS informed Plaintiff that there was "no job for [him] and sent [him] home."  *Id.*

It is unclear what Plaintiff did after 2011, but on October 25, 2013, USPS sent him a letter explaining that although he had been receiving workers' compensation, he had been ordered back to work on July 22, 2013, for three-hour shifts with limited duties.  ECF No. 21 at

---

[5]     The Court takes judicial notice of the documents attached to the SAC.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  The Court also takes judicial notice of documents previously submitted by Plaintiff but not attached to the SAC.  *See Sommersett v. City of New York*, No. 09-cv-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.").

[6]     The Court takes judicial notice of the EEOC's decision, which is a matter of public record.  *See Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 201 (S.D.N.Y. 2021).  Further, "[i]n cases," like this one, "where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of records and reports of the relevant administrative bodies, as well as the facts set forth therein."  *Shaw v. USPS*, No. 09-cv-6617, 2010 WL 3749233, at *9 n.9 (S.D.N.Y. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3767115 (S.D.N.Y. Sept. 27, 2010).

53 (Oct. 25, 2013, USPS Letter of Warning); ECF No. 52 at 1.  Plaintiff states that after being

ordered back to work, he was given tasks with increased job responsibilities but "with[out] any

training."  ECF No. 52 at 3.  The October 25 Letter of Warning informed Plaintiff that he had

failed to report to work on four occasions since August 13, 2013.  ECF No. 21 at 54.  Another

letter directing Plaintiff "to return to work immediately" followed on November 13, 2013.  *Id.* at

71 (Nov. 13, 2013, USPS Absence Letter).  And on November 20, 2013, Plaintiff was suspended

for seven days in a letter charging him with "Failure to Follow Instructions / AWOL."  *Id.* at 55

(Nov. 20, 2013, Suspension Letter).  He filed another EEO complaint in January 2014, which

appears to have related to warnings he was receiving for absences from work.  ECF No. 52 at 21

(January 27, 2014, USPS EEO Complaint); ECF No. 42-1 at 3.  Again, it is unclear precisely

what took place in the intervening period, but Plaintiff worked for at least some time in a role

that was "not busy" before USPS "sent [him] home again" in August 2015.  ECF No. 52 at 4.  In

2016, Plaintiff was diagnosed with gastric cancer, which he attributes to his "work environment

and job stress."  *Id.*  All in all, Plaintiff received three Offers of Modified Assignment from

USPS between April 2015 and July 2017.  *Id.* at 3–8.[7]  In July 2017, he stopped working.  ECF

No. 21 at 52.

---

[7]     This fact comes from a portion of the USPS Defendants' statement of facts.  ECF No. 43
at 10 (USPS Defendants' Motion to Dismiss).  Plaintiff incorporated the relevant page into his
Opposition and provided a detailed counter-chronology which did not dispute this fact.  ECF
No. 52 at 3–8.  In light of that, the Court understands Plaintiff to agree with the USPS
Defendants' representation on this point.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.
2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a
*pro se* party in his papers opposing the motion.").  In any case, Plaintiff attached the first, April
17, 2015, Offer of Modified Assignment to his initial complaint.  ECF No. 21 at 24.  And the
Court may take judicial notice of the March 27, 2017, Offer of Modified Assignment, ECF
No. 42-2 at 4, and July 3, 2017, Offer of Modified Assignment, *id.* at 7, because Plaintiff
possessed such documents and relied on them in "framing the complaint."  *See Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

After USPS sent the July 3, 2017, Notice of Modified Assignment, Plaintiff claimed a recurrence of disability.  ECF No. 28-1 at 5; ECF No. 42-1 at 14–15 (Aug. 24, 2017, OWCP Recurrence Form).  OWCP denied that claim "because the evidence [was] not sufficient to establish that [Plaintiff] [was] disabled/further disabled due to a material change/worsening of [his] accepted work[-]related conditions."  ECF No. 42-3 at 13 (Nov. 13, 2017, OWCP Notice of Decision).  In light of that decision, Plaintiff's "last job offer reverted to the modified assignment" he last received.  ECF No. 42-1 at 4.  On October 8, 2019, USPS issued a notice of removal to Plaintiff, charging him with continuous absence without leave.  ECF No. 1 at 44 (Oct. 8, 2019, USPS Notice of Removal).  That notice stated that USPS had mailed Plaintiff several letters directing him to return to work, that Plaintiff did not provide "any medical information to document [his] continued absences," and that he missed the pre-disciplinary interviews arranged for him.  *Id.*  Plaintiff filed a grievance with his union.  ECF No. 52 at 17.  A subsequent settlement between USPS and Plaintiff's union noted that Plaintiff "repeatedly refused to be interviewed, nor provide any acceptable information/ documentation to explain his continued unscheduled absence."  ECF No. 1 at 47 (Feb. 5, 2020, Settlement).  The parties agreed that USPS's notice of removal was issued for "just cause."  *Id.* (emphasis omitted and capitalization altered).

Plaintiff had met with an EEO counselor on January 24, 2020.  ECF No. 42-1 at 3.  On April 27, 2020, after the union settlement, Plaintiff filed an EEO Complaint of Discrimination.  ECF No. 42-4 at 2 (Apr. 27, 2020, USPS EEO Complaint).  In that formal complaint, Plaintiff referred to an "attached file," which is not before the Court.  *See id.*  On May 14, 2020, USPS's EEO Investigative Services Office sent Plaintiff an "Acceptance for Investigation" letter, which stated that: "You alleged you were subjected to discrimination based on Race (Asian), Color (To

Be Specified), Age (DOB: [Redacted] 1958), Retaliation (Prior EEO Activity) and Physical

Disability (Gastric Cancer) when . . . [o]n or about February 5, 2020, you were issued a Notice of

Removal for continuous Absence Without Leave (AWOL)."  *Id.* at 4 (May 14, 2020, USPS

Acceptance for Investigation Letter).  In that letter, USPS stated the following:

> In your formal complaint you stated you have been subjected to harassment for
> over 20 years and you submitted various documents from your prior EEO
> complaints (4A-110-0101-00 & 4B-110-0012-14).  This information is considered
> to be background information.  In the remote event that those issues are being
> raised as issues in your current complaint, they are dismissed pursuant to 29
> C.F.R. 1614.107(a) which states, Prior to a request for a hearing in a case, the
> agency shall dismiss an entire complaint: (1) that fails to state a claim under
> 1614.103 or 1614.106(a) or states the same claim that is pending before or has
> been decided by the agency or Commission.  Although you claim you are being
> continuously harassed by management, it must be noted that you have been in a
> Leave Without Pay Status since at least September 2017 with no reported actions
> occurring from 2017 through the date you received the administrative action of
> the Notice of Removal.  To qualify as harassment, the actions complained of must
> be ongoing and continuous.  Even a few isolated incidents are not sufficient to
> constitute discriminatory harassment.  *McGivern v. U. S. Postal Service*, EEOC
> Request No. 05930481 (March 17, 1994) and *Vargas v. Department of Justice*,
> EEOC Request No. 05931047 (October 7, 1993).  Your allegation does not
> qualify as harassing conduct.

*Id.* at 4 n.1.  The letter further explained to Plaintiff:  "If you do not agree with the accepted

issue(s) as defined above, you must provide a written response specifying the nature of your

disagreement within seven (7) calendar days of the date of your receipt of this letter."  *Id.* at 5.  It

then informed Plaintiff that his case would be assigned for investigation.  *Id.* at 5–6.

Following the investigation, on November 30, 2020, the Equal Employment Opportunity

Commission ("EEOC") Administrative Judge ("AJ") issued a dismissal order.  ECF No. 42-1 at

2.  The AJ concluded that Plaintiff failed to "proffer[] any direct evidence of discrimination on

the basis of his Race, Color, Age, or Disability."  *Id.* at 5.  The AJ further decided that Plaintiff

"failed to raise a material issue of fact that would establish a prima facie case of disparate

treatment discrimination based upon Race, Color, or Age" and could not "establish that he was

denied an accommodation or . . . was subjected to an adverse personnel action under circumstances giving a rise to an inference of disability discrimination." *Id.* at 7.  The decision noted that Plaintiff "did not appear for work when ordered to nor did he provide satisfactory medical documentation in the manner requested by the Agency," and also "ignored requests to be interviewed and failed to provide any acceptable information or documentation to explain his unscheduled absences" as part of the union grievance process. *Id.* at 8.  Finally, the AJ explained that "neither of the responsible Agency officials were aware of [Plaintiff]'s prior EEO activities" nor "ever actually met [Plaintiff]." *Id.*  The AJ further noted that Plaintiff's last protected activity "closed on April 2, 2014," which prevented her from inferring "retaliatory motive" with respect to the conduct in the 2020 formal complaint. *Id.* at 8–9.  USPS adopted the AJ's decision.  ECF No. 42-4 at 10 (Sept. 26, 2022, Decision on Request for Reconsideration). Plaintiff appealed to the EEOC, which rejected his appeal. *Id.*  He then moved for reconsideration of that decision, which was also denied on September 26, 2022. *Id.*  Plaintiff was informed of his right to sue. *Id.*  As previously mentioned, he did so in the Southern District on November 30, 2022.  ECF No. 1.

Plaintiff attributes the following conduct to the Defendants remaining in the case.  Louis DeJoy is the Postmaster General.  ECF No. 56 at 19.  Plaintiff states only that Defendant DeJoy "represent[s] USPS." *Id.*  Janneth Cancel and Edward Choy were two of Plaintiff's managers at USPS.  ECF No. 55 at 35.  Defendant Cancel issued the Notice of Removal to Plaintiff in October 2019, but never met Plaintiff because he did not report for work.  ECF No. 1 at 46 (Complete Notice of Removal Letter); ECF No. 42-1 at 4–5.  Plaintiff takes issue with the fact that Defendant Cancel apparently failed to respond to an EEO investigator's request during the investigation of Plaintiff's formal complaint in 2020.  ECF No. 28-1 at 5; ECF No. 21 at 47

7

(May 6, 2020, EEO Inquiry Report).  Plaintiff further alleges that she made "false statements" regarding his absences as part of the EEO investigation.  ECF No. 28-1 at 5.  In addition, Plaintiff complains that Defendant Edward Choy was responsible for his August 2015 reassignment to Main Post Office ("MPO") in Flushing, one of the "busiest stations" and where Plaintiff had previously been injured.  ECF No. 55 at 2; *see also* ECF No. 21 at 24 (reflecting Mr. Choy's signature on the Offer of Modified Assignment).  With respect to Defendant Julie Choy, Plaintiff alleges that she was a supervisor at the MPO.  ECF No. 55 at 4.  He submitted an affidavit from a witness who claims to have watched Ms. Choy intervene in a verbal altercation between Plaintiff and another coworker in June 2016.  *Id.* at 24 (Jordan Aff.).  Finally, Plaintiff states that Defendant Xue Jun Ni was a supervisor in the Middle Village Post Office, whom Plaintiff claims "humil[iated] [him] in the lobby in front of c[u]st[o]mers and le[d] 2 USPS detective[s] to the room [to] question [him] about [his] injury" in June 2017.  ECF No. 28-1 at 6; ECF No. 55 at 8.

In addition, Plaintiff sued two Union Defendants.  Defendant Harry Carney was a union representative who signed the settlement agreement making Plaintiff's removal effective.  ECF No. 1 at 47.  Defendant Brian Renfroe was the President of the National Association of Letter Carriers, which Plaintiff says "didn't help union members" and needs to take "responsibility." ECF No. 56 at 19–20.  Plaintiff alleges that the union and USPS were "against [him] together to remove [him] illegally."  ECF No. 21 at 20.

In this case, after pre-motion practice, the USPS Defendants filed their motion to dismiss. ECF No. 40 (Notice of Motion); ECF No. 43.  The Union Defendants followed suit the next day. ECF No. 46 (Notice of Motion); ECF No. 50.  On February 15, 2024, Plaintiff filed an Opposition.  ECF No. 52.  On February 23, 2024, the Union Defendants filed a Reply, ECF

No. 53, and the USPS Defendants did the same on March 5, 2024, ECF No. 54.  Plaintiff filed

two more documents without the Court's leave on June 18, 2024, which the Court construes as

Sur-Replies.  ECF Nos. 55, 56.  The Union Defendants filed a letter on June 24, 2024, which the

Court construes as a motion to strike Plaintiff's Sur-Replies.  ECF No. 57.[8]

## LEGAL STANDARD

### A.  Rule 12(b)(1)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper

when the district court lacks the statutory or constitutional power to adjudicate it."  *Ford v. D.C.

37 Loc. Union 1549*, 579 F.3d 187, 188 (2d Cir. 2009).  Plaintiff bears the burden of establishing

subject-matter jurisdiction by a preponderance of the evidence.  *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000).  The Court may "refer to evidence outside the pleadings" in

resolving a Rule 12(b)(1) motion.  *Id.*

### B.  Rule 12(b)(5)

The Court may exercise personal jurisdiction over a defendant only if service of process

was "procedurally proper."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59

(2d Cir. 2012).  Under Rule 12(b)(5), a defendant may "challeng[e] the mode of delivery or lack

of delivery of the summons and complaint."  *Liu v. Garland*, No. 23-cv-1132, 2024 WL

2941850, at *1 (E.D.N.Y. June 11, 2024).  A plaintiff faced with a Rule 12(b)(5) motion bears

---

[8]     The Court has authority to strike the unauthorized Sur-Replies.  *See Trombetta v.
Novocin*, No. 18-cv-993, 2021 WL 6052198, at *13 (S.D.N.Y. Dec. 21, 2021).  However, in this
instance and in its discretion, the Court declines to do so to allow the *pro se* Plaintiff to present
his strongest case.  Further, admission of the Sur-Replies does not prejudice any Defendant
because, as discussed herein, the documents do not change the Court's bottom-line conclusion
granting Defendants the relief they seek.

the burden of establishing that service was sufficient.  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

####    C.  *Rule 12(b)(6)*

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against the defendant so that it has adequate notice of the claims against it.  *Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.*  To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting

that, even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). The Court must construe *pro se* Plaintiff's pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

## DISCUSSION

Although Plaintiff's extensive pleadings can be difficult to decipher, the Court understands him to allege that Defendants discriminated against him on various bases and also retaliated against him. ECF No. 28-1 at 4. In an earlier pleading, in which Plaintiff used the Southern District's template complaint for employment discrimination cases, Plaintiff invoked every statutory basis provided: (i) Title VII, 42 U.S.C. §§ 2000e *et seq.*; (ii) 42 U.S.C. § 1981; (iii) the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); (iv) the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; (v) the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); (vi) the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); (vii) New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); (viii) New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"); and (ix) "OWCP [L]abor Law."[9] ECF No. 21 at 4–5. He also claims that the Union Defendants breached their duty of fair representation to him. ECF No. 56 at 1.

### I.    Plaintiff Lacks a Cause of Action for Most of His Claims Against the USPS Defendants

The USPS Defendants argue that "[m]ost of Plaintiff's claims are barred by sovereign immunity." ECF No. 43 at 16. Specifically, they move to dismiss Plaintiff's NYSHRL,

---

[9]    This appears to be a reference to Plaintiff's workers' compensation claim under the Federal Employees' Compensation Act ("FECA"), *see* ECF No. 28-1 at 8. To the extent he asks this Court to review his FECA claim, this Court is prohibited by 5 U.S.C. § 8128(b) from doing so and lacks subject-matter jurisdiction over such a claim. *See Mathirampuzha v. Potter*, 548 F.3d 70, 82–83 (2d Cir. 2008) ("[B]ecause liability under the FECA is exclusive, our subject-

NYCHRL, FMLA, ADA, and Section 1981 claims under Rule 12(b)(1), asserting that sovereign immunity represents a bar to exercising subject-matter jurisdiction. *See id.* On this point, the USPS Defendants assume without arguing that they are entitled to sovereign immunity. To be sure, "[t]he shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005); *Tenzin v. USPS Branch*, No. 22-cv-9141, 2022 WL 16836986, at *2 (S.D.N.Y. Nov. 7, 2022). However, because Plaintiff is proceeding *pro se*, and many of the USPS Defendants' arguments reach the merits, the Court considers whether any of these claims may survive if Plaintiff intended to advance these claims against the USPS Defendants in their individual capacities. *See Petralia v. New York*, No. 20-cv-06393, 2021 WL 4034526, at *3 (W.D.N.Y. Sept. 3, 2021) (where the court could not determine if defendants were being sued in their individual capacities, considering both official-capacity and individual-capacity claims).

The starting point of the Court's analysis is that "Title VII provides the sole remedy for federal employees alleging employment discrimination." *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (construing *Brown v. Gen. Servs. Admin.*, 428 U.S. 820 (1976)). Similarly, a federal employee may also sue under the Rehabilitation Act for disability discrimination, *id.* at 103, and under the ADEA for age discrimination, *Long v. Frank*, 22 F.3d 54, 56 (2d Cir. 1994). To the extent Plaintiff seeks to hold the USPS Defendants liable in their individual capacities under statutes outside of this exclusive scheme, he fails to state a claim.

First, it is well-settled that "[r]elief under the NYSHRL and the NYCHRL, which are state and municipal statutes, respectively, is unavailable to persons asserting claims of

---

matter jurisdiction ends where FECA coverage begins."). Such claim is therefore dismissed without prejudice.

discrimination and retaliation arising from federal employment." *Bennett v. Hall*, No. 23-cv-6006, 2023 WL 4977714, at *2 (S.D.N.Y. Aug. 3, 2023) (dismissing NYSHRL and NYCHRL claims brought by federal employee against her former supervisor); *see also, e.g.*, *Kirton v. DOJ*, No. 16-cv-6539, 2018 WL 4636964, at *3 (E.D.N.Y. Sept. 27, 2018) (same as to NYSHRL); *Moore v. DeJoy*, No. 18-cv-9967, 2021 WL 4523503, at *5–6 (S.D.N.Y. Sept. 30, 2021) (same as to Postmaster General); *Wilder v. Shulkin*, No. 14-cv-10072, 2017 WL 2889507, at *4 (S.D.N.Y. June 30, 2017) (same as to Secretary of Veterans Affairs).

Pursuant to this precedent, the Court agrees with the USPS Defendants that Plaintiff's NYSHRL and NYCHRL claims must be dismissed.  That said, the Court disagrees with them about the dismissal's basis.  Certainly, on similar facts, some courts have dismissed NYSHRL and NYCHRL claims based on lack of jurisdiction predicated on sovereign immunity.  *See, e.g.*, *Ross v. Dep't of the Army*, No. 22-cv-670, 2023 WL 5494644, at *2 (E.D.N.Y. Aug. 24, 2023).  However, the USPS Defendants' arguments point to Plaintiff's lack of a cause of action under various statutes, and "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case." *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).[10]  Indeed, in *Rivera*, where, like here, the plaintiff sued several of her federal employee supervisors, the Second Circuit did not discuss sovereign immunity in finding that dismissal of the NYSHRL and NYCHRL claims was required.  *Rivera*, 157 F.3d at 105 ("[A]llowing state law discrimination claims to proceed against [the supervisors] in their individual capacities would allow [the

---

[10]    *Cf. Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (where employer is "not subject to the [National Labor Relations Act]," employee's claim does not implicate subject-matter jurisdiction and should be dismissed under Rule 12(b)(6)).

plaintiff] to evade the holding of *Brown* that Title VII provides the sole remedy for federal employees alleging employment discrimination.").  Accordingly, most courts dismiss NYSHRL and NYCHRL claims in this posture for failure to state a claim rather than for lack of subject-matter jurisdiction.  *See Bennett*, 2023 WL 4977714, at *2; *Moore*, 2021 WL 4523503, at *5–6; *Kirton*, 2018 WL 4636964, at *3; *Wilder*, 2017 WL 2889507, at *4 (cited by USPS Defendants, ECF No. 43 at 16).  This Court will do the same.

In the same vein, "[a]s a federal employee, [Plaintiff] has no remedy for employment discrimination under the ADA."  *Rivera*, 157 F.3d at 103; *see also Lee v. Saul*, No. 19-cv-06553, 2022 WL 1051216, at *12 (S.D.N.Y. Feb. 10, 2022) ("*Lee I*") (explaining that the ADA's definition of "employer" under 42 U.S.C. § 12111(5)(B)(i) does not reach the federal government); *objections overruled and report and recommendation adopted*, 2022 WL 873511 (S.D.N.Y. Mar. 23, 2022).  The same is true with respect to the FMLA.  *See id.* (29 U.S.C. § 2617(a)(2) does not reach the federal government and 5 U.S.C. §§ 6381 *et seq.* create no private right of action for federal employees); *Keen v. Brown*, 958 F. Supp. 70, 75 (D. Conn. 1997) (same); *Beauchat v. Mineta*, No. 03-cv-3196, 2006 WL 2711608, at *9 (E.D.N.Y. Sept. 21, 2006) (same on summary judgment), *aff'd*, 257 F. App'x 463 (2d Cir. 2007).[11]  Nor does Section 1981 provide him with a cause of action.  *Dotson*, 398 F.3d at 162 (explaining that the phrase "under color of state law" in Section 1981 "appl[ies] only to state actors").  Although the

---

[11]     Some courts, noting the absence of binding authority on this issue, have addressed the viability of an FMLA claim brought by a federal employee.  *E.g.*, *Williams v. Soc. Sec. Admin.*, No. 23-cv-2348, 2024 WL 325335, at *2–3 & n.2 (S.D.N.Y. Jan. 29, 2023) ("*Williams I*").  Even if an FMLA interference or retaliation claim were available to Plaintiff, the Court would dismiss it for failure to state a claim because Defendant does not plead that he gave notice to USPS of his intention to take leave, nor that USPS denied him "benefits to which []he was entitled under the FMLA."  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).  That also precludes a claim of FMLA retaliation.  *See Williams I*, 2024 WL 325335, at *3.

USPS Defendants assert sovereign immunity with respect to these claims, ECF No. 43 at 17–19, the Court again concludes that the proper basis for dismissal as to the USPS Defendants is for failure to state a claim. *See Lee I*, 2022 WL 1051216, at *1 (dismissing ADA and FMLA claims in Rule 12(b)(6) posture)[12]; *Dotson*, 398 F.3d at 159, 162 (affirming district court's dismissal of Section 1981 claim under Rule 12(b)(6)). Accordingly, Plaintiff's NYSHRL, NYCHRL, ADA, FMLA, and Section 1981 claims are dismissed with prejudice.

## II. Of the USPS Defendants, Plaintiff May Sue Only Defendant DeJoy for Alleged Violations of Title VII, the Rehabilitation Act, and the ADEA

Plaintiff's Title VII, Rehabilitation Act, and ADEA claims may proceed only as to the Postmaster General. *See* 42 U.S.C. § 2000e-16(c) (Title VII); *Neary v. Weichert*, 489 F. Supp. 3d 55, 65 (E.D.N.Y. 2020) (ADEA; collecting cases); *Torres v. U.S. Dep't of Veterans Affs.*, No. 02-cv-9601, 2004 WL 691237, at *2 (S.D.N.Y. Mar. 31, 2004) (Title VII, ADEA, and Rehabilitation Act; collecting cases). For the reasons already explained, these claims against Defendants Edward Choy, Ni, Cancel, and Julie Choy are therefore dismissed with prejudice, and must be analyzed against Defendant DeJoy in his official capacity. *See Marshall v. Nat'l Ass'n of Letter Carriers Br. 36*, No. 00-cv-3167, 2003 WL 223563, at *7 (S.D.N.Y. Feb. 3, 2003) ("[O]n the plaintiff's Title VII claim, the only appropriate defendant is the Postmaster General, in his official capacity.").

---

[12]     Plaintiff's own authority supports such an outcome. *See Malloy v. Pompeo*, No. 18-cv-4756, 2020 WL 5603793, at *9 (S.D.N.Y. Sept. 18, 2020) (dismissing FMLA and ADA claims due to lack of coverage for federal employees under the statutes rather than on jurisdictional grounds). It is also the only outcome consistent with the specific relief sought by the USPS Defendants. Specifically, they seek dismissal of Plaintiff's claims with prejudice. ECF No. 43 at 32–33. But if sovereign immunity applies, the Court lacks subject-matter jurisdiction over those claims. *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004). And without subject-matter jurisdiction, the Court may not dismiss any claim with prejudice. *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017).

### III.    Plaintiff Has Failed to Exhaust Administrative Remedies for Most of His Claims Under Title VII, the Rehabilitation Act, and the ADEA

Plaintiff has failed to exhaust his administrative remedies with respect to most of his employment discrimination claims brought against Defendant DeJoy under Title VII, the Rehabilitation Act, and the ADEA.  Administrative exhaustion before the EEOC is a prerequisite to bringing any of these claims.  *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015) (Title VII); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 83 (2d Cir. 2023) (ADEA).  "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency," and "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003).  This test applies to Title VII, *see id.*, the Rehabilitation Act, *see Marinelli v. Chao*, 222 F. Supp. 2d 402, 415–16 (S.D.N.Y. 2002), and the ADEA, *see id.*  In sum, "[t]he court[] will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge."  *See Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995).

In the initial complaint in this case, Plaintiff asserted discrimination on nearly every basis:  termination, failure to promote, failure to accommodate his disability, provision of terms and conditions of employment different from those of similar employees, retaliation, and harassment or creation of a hostile work environment.  ECF No. 21 at 6.  At the threshold, the Court must determine if any of these claims are "reasonably related" to the ones presented to the EEOC.  Because failure to exhaust is an affirmative defense, Defendant DeJoy carries the burden of pleading and proving it.  *Hardaway v. Hardford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir.

2018).  Here, Defendant DeJoy directs the Court to the USPS's Acceptance for Investigation, which related just to Plaintiff's termination.  ECF No. 43 at 23.  Defendant suggests that because Plaintiff apparently failed to seek a broadening of the accepted issue, he necessarily failed to exhaust discrimination claims on any other basis.  *See id.*  However, Defendant lacks authority for that position, and the Court disagrees that the reasonable relation test may be so limited. Certainly, it would be wise for a complainant to seek to broaden the EEO investigation in the first instance, which would eliminate the potential exhaustion issue over the initially unaccepted claims.  *See Hurt v. Donahue*, No. 07-cv-4201, 2011 WL 10526984, at *4 (E.D.N.Y. Feb. 24, 2011) ("The claims that the EEOC accepted for investigation and ultimately decided are clearly exhausted and properly before the Court.").  But claims are not necessarily unexhausted "merely because the EEOC chose not to accept them for investigation."  *See id.* at *7.  After all, "in reviewing the charges in the administrative complaint for relatedness, the focus of the inquiry is on the factual allegations."  *See Vasquez v. City of New York – Off. of the Mayor*, No. 22-cv-5068, 2024 WL 1348702, at *4 (E.D.N.Y. Mar. 30, 2024).  Here, Defendant, who carries the burden, has not put the complete EEO complaint before the Court.  *See supra* at 5.  As such, the record is "unclear" as to the relation of the claims presented to the EEOC to those presented in this case, and the Court will not consider Plaintiff's claims unexhausted on this basis alone.  *See Gentile v. Potter*, 509 F. Supp. 2d 221, 230 n.4 (E.D.N.Y. 2007).

Unfortunately for Plaintiff, however, there is not much further for the Court to proceed because nearly all his claims are time-barred.  Under Title VII, the Rehabilitation Act, and the ADEA, "[t]imely exhaustion of administrative remedies requires that a federal employee comply with applicable EEOC regulations."  *Malloy*, 2020 WL 5603793, at *10.  Those regulations require informal counseling within the agency "within 45 days of the alleged discriminatory act"

17

followed by the filing of a formal written complaint "within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint." *Id.* (referencing 29 C.F.R. §§ 1614.105(a)(1), (d)). "This 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir. 2022). In addition to Title VII, this requirement applies to claims under the Rehabilitation Act, *Boos*, 201 F.3d at 184, and the ADEA, *Marinelli*, 222 F. Supp. 2d at 416.

With respect to the time bar, Defendant DeJoy claims that "other than his removal in February 2020, all other incidents Plaintiff refers to in the Complaint occurred in 2017 and earlier," which was "several years before his EEOC filing." ECF No. 43 at 21. As it concerns the present case, Plaintiff made initial contact with an EEO counselor on January 24, 2020. ECF No. 42-1 at 3. However, as Defendant correctly observes, nearly all discriminatory acts alleged by Plaintiff took place far outside of the 45-day period preceding that meeting and appear to reach as far back as 2000, rendering them time-barred. *See* ECF No. 28-1 at 5–6; ECF No. 55 at 1–3 (alleging, for example, that Plaintiff was overworked after returning to work in July 2013).

In addition, the Court agrees with Defendant that the continuing violation doctrine does not save these otherwise time-barred claims. *See* ECF No. 43 at 22. That doctrine "delay[s] the commencement of the statute of limitations period until the last discriminatory act in furtherance of [a] broader unlawful practice," but only where a plaintiff advances "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Tassy*, 51 F.4th at 531–32. Here, Plaintiff just alleges "a series of actionable wrongs," almost all of which fall outside of the limitations period. *Id.* In that situation, Supreme Court and Circuit precedent make clear that the continuing violation doctrine does not save the untimely claims.

*Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  Therefore, these claims

are dismissed with prejudice.[13]

### IV.    Plaintiff Fails to Adequately Plead a Violation of Title VII, the Rehabilitation Act, or the ADEA

As to the exhausted claims against Defendant DeJoy, Plaintiff fails to plausibly allege

violations of Title VII, the Rehabilitation Act, or the ADEA.[14]  Title VII prohibits an employer

from discriminating against an employee because of the employee's race, color, religion, sex, or

national origin.  *See* 42 U.S.C. § 2000e-2(a).  The Rehabilitation Act, 29 U.S.C. § 791, "prohibits

discrimination on the basis of disability in employment decisions by the Federal Government."

*Lane v. Pena*, 518 U.S. 187, 193 (1996).  The ADEA "prohibits discrimination in employment

on the basis of age against persons aged 40 or older."  *D'Cunha v. Genovese/Eckerd Corp.*, 479

F.3d 193, 194 (2d Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).

To state a claim of discrimination under Title VII, "a plaintiff must plausibly allege that

(1) the employer took adverse [employment] action against him, and (2) his race, color, religion,

---

[13]     Because of Plaintiff's *pro se* status, the Court has considered if this case presents "extraordinary circumstances" so as to equitably toll the 45-limitations period.  *See Boos*, 201 F.3d at 185.  It does not.  As in *Boos*, Plaintiff has altogether failed to provide "a particularized description of how h[is] condition adversely affected h[is] capacity to function generally or in relationship to the pursuit of h[is] rights."  *Id.*  Accepting all of Plaintiff's well-pleaded allegations as true, he fails to plausibly allege that he "acted with reasonable diligence" during the multi-year time period he would now need to toll to save many of the barred claims.  *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).  Even if Plaintiff alleges that he experienced "psychiatric violence by USPS," he does not plausibly allege any connection between such a condition and his ability to perform the required counseling for the acts he complains of.  *See* ECF No. 28-1 at 5.  In sum, this case is not at all like those in which courts have found equitable tolling potentially applicable at this stage.  *See, e.g.*, *Mcpherson v. DeJoy*, No. 19-cv-7139, 2021 WL 4813164, at *6 (E.D.N.Y. Aug. 3, 2021) (plaintiff plausibly alleged that she was "incapacitated and unable to file her EEO charge"), *report and recommendation adopted*, 2021 WL 4260643 (E.D.N.Y. Sept. 20, 2021).

[14]     On this issue, the Court adopts the framework used by Chief Judge Swain in *Williams v. Social Security Administration*, No. 23-cv-2348, 2023 WL 3728375, at *6 (S.D.N.Y. May 30, 2023) ("*Williams II*").

sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).  The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.  To state a claim for failure to provide a disability accommodation under the Rehabilitation Act, a plaintiff must allege facts showing that:  "(1) the plaintiff is a person with a disability under the meaning of [the Rehabilitation Act]; (2) an employer covered by the statute had notice of [the plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019).  For a claim under the ADEA, a plaintiff must allege facts indicating that his age was the but-for cause of the employer's adverse employment action. *See Vega*, 801 F.3d at 86.

Defendant raises no exhaustion defense to Plaintiff's claim of discrimination based on his termination.  ECF No. 43 at 20.  Having closely examined Plaintiff's papers, he also alleges that on January 10, 2020, he went to the MPO to resolve an issue with his worker's compensation, and "requested [CA-1] copy."  ECF No. 55 at 3.  (Form CA-1 is the Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation filed with the OWCP, *see* ECF No. 21 at 46.)  However, "management," including Defendant Julie Choy, apparently "refused to see [him]."  ECF No. 55 at 3.  He also complains that Defendant Cancel apparently failed to respond to the EEO investigator in April 2020.  ECF No. 28-1 at 5.  With respect to these latter incidents, as well as any claims that may have been raised in the 2000 and 2014 EEO

20

complaints, the Court assumes *arguendo* that they have also been properly exhausted, but concludes that Plaintiff still fails to state a claim with respect to any of them.[15]

On this point, the Court agrees with Defendant that Plaintiff's papers "consist[] of conclusory statements and no factual allegations that tie any adverse employment actions allegedly pertaining to him to any form of discrimination."  ECF No. 43 at 25.  As to his claims of discrimination under Title VII, "Plaintiff alleges no facts showing that h[is] race [or] color . . . was a motivating factor in any adverse employment action taken against h[im] by [USPS], including h[is] termination."  *Williams II*, 2023 WL 3728375, at *6.  For example, Plaintiff never alleges that there were any comments made about his race or color "that would suggest that either played a role" in any of the alleged adverse actions.  *See Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-cv-2928, 2024 WL 3718675, at *14 (E.D.N.Y. Aug. 8, 2024) (considering absence of comments regarding *pro se* plaintiffs' protected characteristics in dismissing Title VII and Rehabilitation Act claims).  Nor does Plaintiff allege that "similarly situated employees outside of Plaintiff's racial group" were treated more favorably.  *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 398–99 (S.D.N.Y. 2012) (dismissing *pro se* Title VII complaint).  On the contrary, he compares himself explicitly to those *within* his racial group, alleging that he was treated "different[ly]" and with "discrimination" relative to "other Chinese."  ECF No. 21 at 4.  That cannot support any inference of discrimination.  *Cf. Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise . . . an inference [of discrimination] by showing that the

---

[15]     In deference to Plaintiff's *pro se* status, the Court has examined the substance of all of Plaintiff's claims, including those it finds time-barred, to assess if any might be viable notwithstanding the time bar.  Because those allegations suffer from the same defects as those described below, the Court also concludes that Plaintiff would fail to state a claim even were the Court not to treat these claims as time-barred.

employer subjected him to disparate treatment, that is, treated him less favorably than a similarly

situated employee *outside* his protected group." (emphasis added)).

Similarly, assuming that Plaintiff's back and shoulder injuries, gastric cancer, and/or

psychiatric conditions rendered him disabled within the meaning of the Rehabilitation Act, he

fails to state a claim.  Here, the thrust of Plaintiff's complaint is not that he was discriminated

against based on a disability, but rather that his work at USPS caused his various injuries.  For

example, Plaintiff alleges that USPS caused him "mental [injury] and gastric cancer" due to "job

stress[] and long[-term] psychiatric violence."  ECF No. 28-1 at 5.  He further alleges that when

he was required to return to work in 2017, his injury "worse[ned]."  *Id.*  Even if Plaintiff's

alleged injuries are serious, the Rehabilitation Act, a civil rights statute, cannot help him because

"the remedy . . . is a Workers' Compensation claim."  *See Micari v. Trans World Airlines, Inc.*,

43 F. Supp. 2d 275, 283 (E.D.N.Y. 1999) ("The fact that he was reinjured . . . is of no legal

significance . . . .").

Even if the Court construes Plaintiff's pleadings as actually asserting a disability

discrimination claim, it fails.  For one, Plaintiff fails to plead what accommodation he sought, if

he sought one at all.  *See Applewhite*, 2024 WL 3718675, at *10 (granting motion to dismiss

where *pro se* plaintiff "d[id] not describe the specific accommodations she requested or claim

that her requests were reasonable").  But even had he done so, critically, he never pleads that

USPS denied him such an accommodation.  *See Lee v. Saul*, No. 19-cv-6553, 2020 WL 7029264,

at *3 (S.D.N.Y. Aug. 31, 2020) ("*Lee II*") ("Plaintiff's allegations that Defendant 'removed

reasonable accommodations,' 'did not have reasonable accommodations,' did not follow

'Reasonable Accommodations procedure,' without more, are simply conclusory statements that

do not state a plausible claim of employment discrimination."), *report and recommendation*

*adopted as modified*, 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020).  Plaintiff's primary

grievance appears to be that he was required to work at the MPO, where he claims to have been

overloaded with job responsibilities.  ECF No. 21 at 25; ECF No. 55 at 2.  But that is not an

assertion that he was ever denied an accommodation, dooming his claim.

Specifically with regard to his termination, Plaintiff also fails to adequately plead

causation.  "[A] plaintiff must show the *connections* between (1) the failure to accommodate a

disability, (2) the performance deficiencies, and (3) the adverse employment action."  *Natofsky*,

921 F.3d at 352.  Plaintiff fails to plausibly allege that any failure to accommodate caused a

performance deficiency, which "ultimately resulted" in his termination.  *Id.*  On the contrary,

Plaintiff's own pleadings demonstrate that he was fired for "his continued failure to report to

work, refusal to provide acceptable medical documentation to support his absence, and failure to

appear for pre-disciplinary interviews."  ECF No. 28-1 at 39.  As such, he has failed to "give

plausible support to a minimal inference of discriminatory motivation" for firing him.  *Vega*, 801

F.3d at 84.

Further, to the extent Plaintiff attempts to state a claim of disability discrimination based

on a hostile work environment, it also fails.  Assuming such a claim is cognizable under the

Rehabilitation Act, Plaintiff would be required to plead "two principal elements":  (1) "the

workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment"; and (2) "a specific basis exists for imputing the conduct that

created the hostile environment to the employer."  *Kelly v. N.Y. State Off. of Mental Health*, 200

F. Supp. 3d 378, 399 (E.D.N.Y. 2016).  Here, Plaintiff submitted an affidavit from a coworker at

the MPO, who states that other coworkers "made negative comm[ent]s [about] his disability

related injury, look[ed] down upon and laugh[ed] at him with no respect and management[] didn't help him to solve[] the issue[s] at all[]."  ECF No. 55 at 23 (Tseng Aff.).  Relatedly, Plaintiff alleges that another coworker negatively commented on Plaintiff's limited working hours.  ECF No. 21 at 20.  However, Plaintiff's allegations that he was subject to "negative comments" about his disability, without more, fall well below the "severe and pervasive" standard needed to state a claim.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("the sporadic use of abusive language" is not actionable); *Robinson v. Dibble*, 613 F. App'x 9, 13 (2d Cir. 2015) ("[C]rude and offensive comments directed at [the plaintiff's] gender or mental health issues that were delivered sporadically by coworkers . . ., while condemnable, did not rise to the level of creating an abusive and hostile workplace environment.").

Finally, under the ADEA, "Plaintiff alleges no facts showing that, but for h[is] age []he would not have suffered an adverse employment action, including h[is] termination."  *Williams II*, 2023 WL 3728375, at *6.  Aside from asserting in a totally conclusory manner that he was discriminated against on the basis of "age," there is no factual matter whatsoever to plausibly allege but-for causation.  *E.g.*, ECF No. 28-1 at 6.  That is plainly insufficient to state a claim for age discrimination.  *Williams II*, 2023 WL 3728375, at *6.

Any retaliation claim also fails.  To state a claim of retaliation under Title VII, a plaintiff must allege facts showing that:  "(1) [the] defendant[ ] discriminated–or took an adverse employment action–against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)). "For an adverse retaliatory action to be 'because' a plaintiff opposed an unlawful employment practice, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.  It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."

24

*Williams II*, 2023 WL 3728375, at *7 (quoting *Vega*, 801 F.3d at 90–91).  The pleading

requirements are the same for a claim of retaliation under the ADEA.  *Id.*  To state a claim of

retaliation under the Rehabilitation Act, a plaintiff must show that:  "(i) [he] was engaged in

protected activity; (ii) the alleged retaliator knew that [he] was involved in protected activity;

(iii) an adverse decision or course of action was taken against [him]; and (iv) a causal connection

exists between the protected activity and the adverse action."  *Natofsky*, 921 F.3d at 353.  Such a

causal connection may be shown either:  "(1) indirectly, by showing that the protected activity

was followed closely by discriminatory treatment, or through other circumstantial evidence such

as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly,

through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Id.*

In this case, Plaintiff's Title VII and ADEA retaliation claims fail because he pleads

nothing to suggest that he suffered an adverse employment action because he opposed an

unlawful employment practice.  *See Williams II*, 2023 WL 3728375, at *7.  Nor, under the

Rehabilitation Act, does he allege any causal connection between protected activity and any

adverse employment action.  *See id.*  Indeed, as it relates to Plaintiff's termination,[16] USPS

issued the notice of removal in October 2019, months before he met with the EEO counselor in

January 2020.  *See supra* at 5.  That cannot support a retaliation claim.  *See Forrest v. N.Y.C.

Housing Auth.*, No. 22-cv-06480, 2023 WL 3203646, at *10 (S.D.N.Y. May 2, 2023) ("[C]ourts

---

[16]     To the extent Plaintiff complains that he was retaliated against when he was refused a
workers' compensation form in January 2020 and/or a supervisor failed to respond to an EEO
request in April 2020, his claims separately fail because those are not "adverse employment
actions," or ones that cause a "materially adverse change in the terms and conditions of
employment."  *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).  The adverse employment
action must be "more disruptive than a mere inconvenience or an alteration of job
responsibilities."  *Id.*  On these allegations, it is difficult to see any "adverse change" at all, as
Plaintiff pleads that he had already been terminated and had not been working since 2017.  *See
Mathirampuzha*, 548 F.3d at 78 (emphasizing that a "change" is necessary).

in the Second Circuit have . . . dismissed retaliatory discharge claims because the employer made their termination decision before the protected activity."). And to the extent Plaintiff is relying on his much earlier EEO activity in 2014 (or even 2000), or any of the other issues he raised in 2017 or earlier, Defendant is right to observe that too much time elapsed to support an inference that there is a connection between any protected activity and his ultimate firing, especially where, as here, Plaintiff pleads nothing else to support an inference of retaliation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *see also Stinson v. Morningstar Credit Ratings, LLC*, No. 22-cv-6164, 2024 WL 3848515, at *17 (S.D.N.Y. Aug. 16, 2024) (collecting cases finding that gaps as short as two months, without any other support, sufficient to break the causal connection).

At bottom, Plaintiff's allegations paint the picture of workplace in which there was a breakdown of his relationships with supervisors, coworkers, and customers, and in which he became deeply unhappy. *See, e.g.*, ECF No. 14 at 1 (in 2016, coworker "emotional[ly] and angr[ily] yell[ed]" at Plaintiff and Plaintiff's supervisor directed him to apologize to coworker); *id.* (in 2016, USPS customer "lost control and yell[ed]" at Plaintiff with a "bad attitude[]"); *id.* (USPS customers acted in a "r[i]diculous, rude, [and] irrational" way); *id.* at 2 (coworkers did not "like" Plaintiff); ECF No. 55 at 2 (Plaintiff had the "worst ever" supervisor). Those facts, though, do not entitle Plaintiff to relief under civil rights statutes, which protect him against discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace."); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination* . . . .").

Plaintiff asserts that USPS's actions "are illegal and connected to race, retaliation, [and] discrimination," ECF No. 55 at 2, and are "related to discrimination[,] . . . retaliation[], age, job violations, disability, [and] race," ECF No. 52 at 1, but such bald and conclusory assertions will not do. *See Bledsoe v. Delta Air Lines*, No. 23-cv-03146, 2024 WL 1142321, at *3 (E.D.N.Y. Mar. 15, 2024) (dismissing *pro se* Title VII race discrimination claim where "[t]he Complaint and Opposition [were] completely silent with respect to any action or comment on the part of Defendant that in any way implicate[d] race in the decision to terminate him"); *Applewhite*, 2024 WL 3718675, at *20 (dismissing claims based on "vague factual predicates and conclusory labels").[17]

## V.    Plaintiff Failed to Properly Serve the Union Defendants

The Union Defendants move for dismissal of the claims against them under Rule 12(b)(5) for insufficient service of process. *See* ECF No. 50 at 9–11. Plaintiff's proof of service in this case is an affidavit, apparently signed by a USPS employee, indicating that Plaintiff's wife mailed the summons to the Union Defendants. ECF No. 33 at 1–2. That is not a permissible method of service under Rule 4(e). To the extent Plaintiff relies on New York's service provisions, as allowed under Rule 4(e)(1), just mailing the summons was inadequate. *See* N.Y. C.P.L.R. § 308(2) (permitting personal service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" *plus* mailing); *Futia v. Roberts*, No. 23-cv-1774, 2023 WL

---

[17]     In an earlier amended complaint, ECF No. 21 at 67, and in his Opposition, ECF No. 52 at 4, 23–26, Plaintiff asserts that he is owed backpay for a roughly one-month period in 2015 under the New York Labor Law ("NYLL"). In addition to being procedurally improper, any NYLL claim (or, for that matter, claim under the Fair Labor Standards Act ("FLSA")) is time-barred under the laws' respective maximum statute of limitations of six and three years. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 n.7 (S.D.N.Y. 2017). Any unpaid wage claims from 2015 are dismissed with prejudice.

8237246, at *7 (S.D.N.Y. Nov. 28, 2023) ("[U]nder both New York law and Rule 4, service on an individual by mail alone is insufficient.").  Because service was ineffective under Rule 4(m), the Court grants the Union Defendants' Rule 12(b)(5) motion and dismisses the claims against them without prejudice.

In addition, the Court agrees with the Union Defendants that the time for Plaintiff to serve the Union Defendants should not be extended.  *See* ECF No. 50 at 11.  To be sure, "if the plaintiff shows good cause for the failure [to serve within the specified time], the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  And the Court is aware of its obligation to show "special leniency" to a *pro se* plaintiff on a procedural issue like service.  *Futia*, 2023 WL 8237246, at *8.  That said, "*pro se* status is not automatically enough to constitute good cause for the purposes of Rule 4(m)."  *Terry v. Vill. of Ossining*, No. 12-cv-5855, 2013 WL 5952834, at *5 (S.D.N.Y. Nov. 5, 2013).  And in these circumstances, there is no good cause or other persuasive reason to extend the time for Plaintiff to serve.  After this case was transferred to this District, Magistrate Judge Bloom directed Plaintiff to serve Defendants on January 13, 2023.  ECF No. 8.  When Plaintiff instead filed a "blank proof of service form," *see* ECF No. 9, and an amended complaint, ECF No. 10, Judge Bloom again directed him to serve Defendants on March 1, 2023.  ECF No. 11.  Plaintiff then filed affidavits of service, including on Union Defendant Renfroe, ECF No. 13, but Judge Bloom informed Plaintiff on April 12, 2023, that service was improper because Plaintiff declared that he personally served several Defendants, which is prohibited under the Federal Rules, ECF No. 17.[18]  After another filing by

---

[18]     Although an attorney appeared for Defendant Renfroe on April 10, 2023, ECF No. 15, "it is a well-settled principle of law in this Circuit that merely appearing before the court does not waive the defense of insufficient service of process."  *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 15-cv-726, 2016 WL 777906, at *6 (D. Conn. Feb. 29, 2016).  Service of the SAC via ECF

Plaintiff, Judge Bloom reminded Plaintiff about the service deadline of May 30, 2023.  ECF
No. 19.

When Plaintiff again purported to serve several Defendants, including Defendant
Renfroe, via certified mail, ECF No. 22, Judge Bloom specifically informed Plaintiff on May 9,
2023, that "the Federal Rules . . . do not permit service solely via mail," reminded him of the
deadline to serve, and instructed Plaintiff where he could obtain assistance.  ECF No. 23.  As
with each warning, Judge Bloom wrote:  "**Plaintiff is reminded that he must properly serve
defendants and file proof of proper service by May 30, 2023, or I shall recommend that this
case should be dismissed without prejudice against the defendants who have not been
properly served**."  *See id.* (emphasis in original).  When Plaintiff again filed purported proof of
service only via mail, ECF No. 24, Judge Bloom reminded Plaintiff of her prior Order, in which
she informed Plaintiff that service by mail was improper, ECF No. 25.  But, "in light of
[P]laintiff's *pro se* status," Judge Bloom gave Plaintiff an extension to July 7, 2023, to serve
Defendants.  *See id.*  Judge Bloom later stayed that deadline to allow Plaintiff to file the SAC.
ECF No. 27.  After Plaintiff did so, Judge Bloom ordered Plaintiff on July 21, 2023, to serve
Defendants with the summons and SAC on or before October 19, 2023.  ECF No. 29.  On
September 25, 2023, Plaintiff then filed the ineffective proof of service now before the Court.
ECF No. 33.  On October 3, 2024, Union Defendant Carney indicated his intention to move to
dismiss on the same basis previously provided by Union Defendant Renfroe.  ECF No. 34.  On
November 2, 2023, the Union Defendants filed a letter on the docket indicating that they had still
not been served with the SAC.  ECF No. 36.

---

under Rule 5 was insufficient "because Rule 5 governs service of pleadings only after a party has
been hauled into court through service of the summons and complaint under Rule 4."  *See Shum
v. JILI Inc.*, No. 17-cv-7600, 2022 WL 17403608, at *3 (E.D.N.Y. Dec. 2, 2022).

Despite Judge Bloom's persistent and diligent efforts to instruct *pro se* Plaintiff on proper service, Plaintiff has, to this day, not filed proof of proper service on the Union Defendants. Critically, service remains defective because Plaintiff's wife only mailed the summons to the Union Defendants, the precise defect identified twice by Judge Bloom.  ECF No. 23; ECF No. 25.  Nor does Plaintiff meaningfully address[19] this issue in his voluminous opposition papers.  *Cf. Liu*, 2024 WL 2941850, at *2 (dismissing *pro se* complaint under Rule 12(b)(5) where plaintiff failed to respond to motion to dismiss).  Plaintiff plainly failed to comply with Judge Bloom's October 19, 2023, deadline to serve the Union Defendants with the SAC, and under the circumstances described herein, no extension is warranted.  *See Demarco v. City of New York*, No. 08-cv-3055, 2010 WL 3394655, at *3 (E.D.N.Y. Aug. 25, 2010) (in case involving *pro se* plaintiff, adopting recommendation of dismissal on service grounds, "particularly in light of Judge Bloom's clear directives on serving such Defendants and the repeated and generous extensions of time in which to do so"); *Milord v. Duran*, No. 13-cv-5451, 2014 WL 4207610, at *1–2 (E.D.N.Y. Aug. 25, 2014) (adopting recommendation of dismissal on service grounds where Judge Bloom specifically informed the *pro se* plaintiff that service by mail alone was insufficient).

---

[19]     From what the Court can understand, *see* ECF No. 52-1 at 15–16, Plaintiff relies on the Court's November 2, 2023, Order, to argue that service was proper, *see* ECF No. 8.  In that Order, the Court directed the Union Defendants to brief the motion to dismiss and stated that "[a]ny remaining Defendants who have been properly served are directed to file their motions to dismiss" according to the same schedule.  *Id.* at 1.  When the Union Defendants sought clarification regarding that Order on the basis that they had not yet been served, ECF No. 36, the Court instructed them to follow the previously ordered briefing schedule and to "provide all potential arguments for dismissal in their briefing," *see* Nov. 2, 2023, Text Order.  At no point did the Court or Judge Bloom indicate that the Union Defendants (or any Defendants) had been properly served.  Plaintiff's own opposition again suggests that he believes service by mail alone was adequate.  *See* ECF No. 52-1 at 17.

## VI.     The Court Declines to Grant Plaintiff Leave to Amend

Plaintiff seeks leave to amend to include additional facts presented in his Sur-Replies.

ECF No. 55 at 5; ECF No. 56 at 2.  Although the Second Circuit "strongly favors liberal grant of

an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines

to grant Plaintiff further opportunity to further amend the SAC.  *Noto v. 22nd Century Grp., Inc.*,

35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give

leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason,

including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP*

*Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming

denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed

amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *In re*

*Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).

As this decision makes clear, the Court has conducted a detailed review of all the

substantive papers filed by Plaintiff.  *See* ECF Nos. 1, 10, 18, 20, 21, 26, 28, 52, 55, 56.  Those

papers are voluminous, repetitive, and disorganized.  Nevertheless, even though not required, the

Court has excused compliance with the relevant procedural rules to allow Plaintiff, whose

sprawling allegations cover a twenty-plus year period and involve many different incidents, to

present all relevant information so as to allow the Court to make out the "strongest arguments"

suggested by his pleadings.  *See Triestman*, 470 F.3d at 472, 477.  At this point, "Plaintiff has

pleaded his case exhaustively."  *See Vasquez*, 2024 WL 1348702, at *14 (denying leave to

amend).  Based on the foregoing, the Court easily concludes that granting further leave to amend

is inappropriate because there is no "indication that a valid claim might be stated" as to those

claims dismissed under Rule 12(b)(6).  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

That is especially true in this case because, as explained above, Plaintiff seeks to use this

litigation to resolve workplace grievances unrelated to discrimination *See id.* ("The problem with [the plaintiff]'s causes of action is substantive; better pleading will not cure it. . . . Such a futile request to replead should be denied."). Other claims are time-barred. None of these claims will be viable. In any event, because I have considered the allegations raised for the first time in the Opposition and Sur-Replies, including the many exhibits, as if they were included in a formal amended complaint, Plaintiff has effectively already been given a second, third, and fourth opportunity to amend the SAC. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022). That is already three more times than the Circuit ordinarily requires, *see Applewhite*, 2024 WL 3718675, at *21, and further leave to replead would be futile.

## <u>CONCLUSION</u>

For the reasons explained herein, Plaintiff's claims against the USPS Defendants (including official capacity claims against Defendant DeJoy as Postmaster General) under Title VII, the Rehabilitation Act, the ADEA, Section 1981, the ADA, the FMLA, the NYSHRL, the NYCHRL, the FLSA, and the NYLL are dismissed with prejudice. Any claim under the FECA, or any claim brought against the USPS Defendants (except for Defendant DeJoy) in their official capacities, are dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiff's claims against the Union Defendants are dismissed without prejudice for insufficient service of process. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Because all of Plaintiff's

claims are dismissed, the Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

      SO ORDERED.

                                    */s/ Hector Gonzalez*
                                      HECTOR GONZALEZ
                                      United States District Judge

Dated: Brooklyn, New York
       September 5, 2024